**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ESRA ABUARQOB ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 24-3467-BAH |
| ERIKA CASTRO ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs Esra Abuarqob ("Abuarqob"), Irina Ursu ("Ursu"), and Mohammad Arqob ("Arqob") (collectively "Plaintiffs") bring this lawsuit against Erika Castro ("Castro"), Rafat A. Abuarqob ("Rafat"), Bank of America, N.A. ("BANA"), Wells Fargo Bank, N.A. ("Wells Fargo"), Fatin Alkhaleel ("Fatin"), and Ali Alkhaleel ("Ali") (collectively "Defendants"),[1] asserting multiple claims arising from an alleged scheme to steal identities for illicit gain. Pending before the Court are four motions to dismiss Plaintiffs' second amended complaint ("complaint") (ECF 59) filed by Rafat and Castro (ECF 63), Ali (ECF 54), Wells Fargo (ECF 56), and Fatin (ECF 55).[2] Also before the Court is a motion to strike Plaintiffs' response to Ali's motion to dismiss. ECF 79. The parties have filed numerous responses and replies to the five motions. *See* ECF 75 (Plaintiffs' response to Rafat and Castro's motion to dismiss); ECF

[1] Plaintiffs allege that Erika Castro is also known as "Ericka Castro" and "Golda Herrera Aguilera," ECF 59, at 1 (second amended complaint) ("complaint"), and refer to Castro as "Aguilera" throughout the complaint. The Court will refer to her as "Castro" throughout this opinion. Plaintiffs also allege that Irina Ursu is formerly known as Irina Baluta, yet refer to her as Baluta throughout the complaint. ECF 59, at 1. The Court will refer to her as "Ursu." Also, to avoid confusion due to their shared surnames, the Court refers to Defendant Rafat Abuarqob as "Rafat" and Plaintiff Esra Abuarqob as "Abuarqob." The Court also refers to Fatin Alkhaleel and Ali Alkhaleel as "Fatin" and "Ali" due to their shared surname.

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

82 (Fatin's reply); ECF 76 (Plaintiffs' response to Ali's motion to dismiss); ECF 77 (Plaintiffs' response to Fatin's motion to dismiss); ECF 78 (Plaintiffs' response to Wells Fargo's motion to dismiss); ECF 81 (Wells Fargo's reply); ECF 80 (Plaintiffs' response to Ali's motion to strike).

The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the motion to strike (ECF 79) is GRANTED, Wells Fargo's motion to dismiss (ECF 56) is GRANTED, and the remaining motions to dismiss (ECF 54, 55, & 63) are DENIED in part and GRANTED in part.

## I. <u>BACKGROUND</u>

### A. Factual Allegations

Plaintiffs each allege that they came to the United States at different times under J1 student visas and were subsequently employed at one of the various restaurants owned and managed by former spouses Rafat and Castro. ECF 59, at 3–4 ¶ 14, at 12 ¶ 69, at 13 ¶¶ 78, 80. Plaintiffs allege that, as a condition of employment, Rafat and Castro required them to provide copies of their identification documents including pictures of Plaintiffs' passports, visas, and social security cards. *Id.* at 4 ¶ 17, at 12 ¶ 71, at 13 ¶ 79. Plaintiffs allege that they later discovered that Rafat and Castro, with the assistance of Ali and Fatin, had opened fraudulent bank accounts, credit cards, and LLCs in their names and without their authorization. *Id.* at 5–6 ¶¶ 26–28, at 7 ¶ 38, at 12–13 ¶¶ 73–74, at 14–15 ¶ 86. The bank accounts and credit cards were allegedly located in various banking institutions, including BANA and Wells Fargo. *Id.* at 5–6 ¶¶ 26–27.

Plaintiffs contend that Rafat and Castro jointly controlled this alleged identity theft scheme, and received the assistance of Fatin, a Wells Fargo banker, and her spouse Ali, who allegedly filed the articles of incorporation for at least one of the fraudulent companies. *Id.* at 6 ¶ 28, at 8 ¶ 41, at 9 ¶¶ 47–48, at 10 ¶ 53. Plaintiffs aver that Rafat, Castro, Fatin, and Ali,

along with other perpetrators and entities not parties to this case, "acted in concert with each other to pursue a common interest for the benefit of their enterprise," which Plaintiffs refer to as the "Rafat Enterprise." *Id.* at 9 ¶ 53.

Arqob also alleges that as part of his employment duties with Rafat and Castro's restaurant, he was instructed to "collect[ ] mail from multiple addresses" and "open a [post office] box," where he alleges Rafat, Castro, and others received mail related to the identity theft scheme, "including correspondence in numerous names Arqob later learned were stolen identities." *Id.* at 13–14 ¶¶ 81–82, 85. When Arqob began to question the "volume and nature of the mail he was collecting," and attempted to refuse to participate further, Rafat allegedly threatened to "get [him] deported." *Id.* at 14 ¶ 84.

Plaintiffs allege that the Rafat Enterprise perpetrated this identity theft scheme over the course of many years, with alleged acts in furtherance of the scheme spanning from 2013 to 2022. *Id.* at 10 ¶ 49(c), at 15 ¶ 87. They have identified five additional alleged victims by name who are not parties to this case. *Id.* at 9 ¶ 46, at 15 ¶ 89. Abuarqob contends that due to Defendants' actions she has "been named as a [d]efendant in multiple lawsuits," *id.* at 7 ¶ 35, and has suffered "damage to her credit report[,] her financial reputation, loss of credit opportunity, loss of income, loss of employment, emotional distress, attorney's fees and court costs," *id.* at 11 ¶ 57. Arqob alleges that "[a]s a result of the actions of the Rafat Enterprise, [he] has suffered damages, court costs, and attorney's fees." *Id.* at 16 ¶ 92.

Plaintiffs bring six claims: violation of the Racketeer Influenced and Corrupt Organization ("RICO") Act against Castro, Rafat, Fatin, and Ali (Count I); fraud against Castro and Rafat (Count II); civil conspiracy against Rafat, Castro, Ali, Fatin "and/or in the alternative Wells Fargo" (Count III); unjust enrichment against Rafat, Castro, Fatin, and Ali (Count IV); negligence against Wells Fargo and BANA (Count V); and violation of 15 U.S.C. § 1681 et seq. against BANA (Count VI). *Id.* at 16–26 ¶¶ 93–155. Plaintiffs seek compensatory and

punitive damages, attorneys' fees and court costs, and an order directing Wells Fargo and BANA "to remove Abuarqob's bank account and credit card account from all credit reporting agencies." *Id.* at 26–27.

**B. Procedural History**

On November 27, 2024, Abuarqob filed her initial complaint in this case against Rafat, Castro, and BANA. ECF 1 (initial complaint). After those defendants filed responsive pleadings, Abuarqob filed an amended complaint as a matter of course, adding Wells Fargo, Fatin, and Ali as defendants, thereby rendering moot Rafat and Castro's initial motion to dismiss. *See* ECF 16 (amended complaint); ECF 21 (order denying Rafat and Castro's initial motion to dismiss as moot). Ali, Fatin, Rafat and Castro, and Wells Fargo filed motions to dismiss the amended complaint, and BANA filed an answer. *See* ECF 22 (Rafat and Castro's motion to dismiss amended complaint); ECF 23 (BANA's answer to amended complaint); ECF 29 (Ali's motion to dismiss amended complaint); ECF 36 (Wells Fargo's motion to dismiss amended complaint); ECF 37 (Fatin's motion to dismiss amended complaint).

Abuarqob then sought leave to again amend the complaint, which the Court granted on December 10, 2025, thereby mooting the pending motions to dismiss. ECF 48.[3] The second amended complaint, ECF 59, is now the operative complaint in this case, and the Court will simply refer to it as "complaint" throughout this opinion. Ali, Fatin, Rafat and Castro, and Wells Fargo again filed motions to dismiss the complaint, and BANA again filed an answer. ECF 63 (Rafat and Castro's motion to dismiss); ECF 54 (Ali's motion to dismiss); ECF 56 (Wells Fargo's motion to dismiss); ECF 55 (Fatin's motion to dismiss); ECF 61 (BANA's answer). As such, the Court hereinafter refers to Rafat, Castro, Wells Fargo, Fatin, and Ali

[3] This opinion is also available at *Abuarqob v. Castro et al.*, Civ. No. 24-3467-BAH, 2025 WL 3539203 (D. Md. Dec. 10, 2025).

collectively as the "Moving Defendants." Finally, on April 16, 2026, Ali filed a motion to strike Plaintiffs' response to his motion to dismiss for untimeliness. ECF 79.

## II. LEGAL STANDARD

### A. Motion to Strike

The Court has discretion to either consider or strike a party's untimely filing upon a motion to strike. *See Curtis v. Evans*, Civ. No. DKC-03-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004) (noting that the local rules do not "provide the consequence for a failure to meet the prescribed deadline" and the matter therefore rests in the Court's discretion). In making this determination, the Court may consider whether and to what extent the untimely party has missed prior deadlines in the case. *Jones v. Blair Wellness Center, LLC*, Civ. No. ADC-21-2606, 2023 WL 4352451, at *5 (D. Md. June 30, 2023) (exercising the court's discretion to grant defendants' motion to strike "[b]ecause [p]laintiff has consistently defied the Court's deadlines in this case with no explanation").

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

The Court will first address the motion to strike and then the motions to dismiss.

### A. Ali's Motion to Strike Plaintiffs' Response as Untimely

Ali filed a motion to strike the Plaintiffs' response to his motion to dismiss as untimely. ECF 79. Plaintiffs oppose the motion to strike. ECF 80. Ali contends that the Court should strike Plaintiffs' response because they filed it one day late, even after receiving an extension from the Court three days earlier. *See* ECF 79, at 1; *see also* ECF 76 (Plaintiffs' response filed on April 16, 2026); ECF 74, at 6–7 (granting Plaintiffs' motion for extension of time, setting their deadline as April 15, 2026, and cautioning that "NO further extensions will be provided" (all caps in original)). Although "[c]reating a clear record benefits both parties," *McDonald v. Wal-Mart Stores East*, No. 3:07cv425, 2008 WL 153783, at *1 n.1 (E.D. Va. Jan. 14, 2008), the Court also reminds Plaintiffs that "[a]dherence to this Court's deadlines is important," *Canty-Massey v. Vantage Management, Inc.*, Civ. No. GLR-23-2227, 2024 WL 2941265, at *1 n.1 (D. Md. June 11, 2024).

Given the circumstances of this case, granting the motion to strike will not change the outcome of the motions to dismiss. The Court must still consider Ali's motion to dismiss on its merits, even absent opposition from Plaintiffs. *See Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th Cir. 2026) (holding that motions to dismiss must be considered on their merits even if they are unopposed). Moreover, Plaintiffs' arguments in opposition to Ali's

motion are substantively similar to those Plaintiffs raised in opposition to the other motions to dismiss, none of which the other defendants have moved to strike. *See generally* ECF 75; ECF 77; ECF 78.[4] Therefore the Court is free to consider Plaintiffs' arguments as raised in their other responses. Given these considerations, and the Court's prior warning to the parties that there shall be no further extensions of the deadlines in this case, the Court will exercise its discretion to grant the motion to strike.

**B. Moving Defendants' Motions to Dismiss**

1. Count I, RICO Violation

Plaintiffs bring Count I, an alleged RICO violation pursuant to 18 U.S.C. § 1962, against Castro, Rafat, Fatin, and Ali. ECF 59, at 16. Each defendant on this count moves to dismiss under Rule 12(b)(6), arguing that Plaintiffs have failed to state a claim upon which relief can be granted. ECF 54-1, at 4; ECF 55-1, at 5; ECF 63-1, at 7.

Plaintiffs allege that Castro, Rafat, Fatin, and Ali violated sections (b), (c), and (d) of 18 U.S.C. § 1962. That statute provides, in relevant part, that:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

[4] Fatin and Wells Fargo argued in reply that the Court should not consider Plaintiffs' responses due to their untimeliness, but since they did not file motions to strike, the Court need not strike Plaintiffs' relevant filings. ECF 81, at 2; ECF 82, at 2. Castro and Rafat did not file a reply and therefore did not raise any arguments regarding Plaintiffs' untimely response.

18 U.S.C. § 1962. The statute provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). The statute defines racketeering to include "any act which is indictable under any of the [enumerated] provisions of title 18, United States Code," which include, in relevant part, "section 1028 (relating to fraud and related activity in connection with identification documents), . . . section 1341 (relating to mail fraud), [and] . . . section 1344 (relating to financial institution fraud)." 18 U.S.C. § 1961(1).[5]

"In order for a civil RICO claim to survive a Rule 12(b)(6) motion to dismiss, plaintiff[s] must allege '(1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering.'" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 588 (D. Md. 2014) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "Plaintiff[s] must additionally plead proximate cause, that is [they were] injured in [their] business or property 'by reason of' the RICO violation." *Id.* (quoting *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 6 (2010)).

*i. Count I Will Not Be Dismissed Due to Purported Untimeliness.*

In his motion to dismiss, Ali argues that Plaintiffs' RICO claim is barred by its four-year statute of limitations. ECF 54, at 8. The Court will not dismiss Count I on this basis. "[T]he applicable statute of limitations for RICO violations is four years." *CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 729 (4th Cir. 2010) (citing *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987)). The Fourth Circuit has held that "the statutory period [for a RICO claim] begins to run when a plaintiff knows or should know of the injury that underlies his cause of action." *Id.* (quoting *Pocahontas Supreme Coal Co. v. Bethlehem*

[5] These are the underlying offenses on which Plaintiffs appear to rely throughout their complaint. *See* ECF 59, at 17 ¶ 96. Plaintiffs cite 18 U.S.C. § 1342 rather than § 1341 when referring to "racketeering activity includ[ing] mail fraud," but since Plaintiffs identify the underlying offense as mail fraud, the Court will proceed under the assumption they intended to cite § 1341.

*Steel Corp.*, 828 F.2d 211, 220 (4th Cir.1987) (internal quotations omitted)). "[A] defense based on the statute of limitations" typically "must be raised by the defendant through an affirmative defense," which the defendant bears the burden of establishing. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citing Fed. R. Civ. P. 8(c)). "It follows, therefore, that a motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Id.* Only under "rare circumstances" may this defense be reached through a Rule 12(b)(6) motion to dismiss, and only "if all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis omitted).

Ali contends that the allegations in the complaint are limited to his actions between 2013 and 2015, and that the RICO action against him is therefore time-barred since this case was initiated on November 27, 2024. ECF 54-1, at 9; *see also* ECF 1. However, in the complaint, Abuarqob alleged that she did not begin to discover the "injur[ies] that underl[y] [this] cause of action" until 2022. *CSX Transp. Inc.*, 406 F. App'x at 729 (quotations omitted); *see also* ECF 59, at 4–5 ¶¶ 24–26. In fact, Abuarqob contends she did not learn about Parsonsburg Road LLC, the incorporation of which is one of her central allegations against Ali in particular, until 2024. ECF 59, at 6 ¶¶ 27–28. The face of the complaint therefore does not support an argument that Abuarqob knew of the injuries underlying her RICO claim before 2022, and Ali's argument that she should have known with "reasonable diligence," ECF 54-1, at 9, prior to that time cannot prevail at the motion to dismiss stage. The complaint alleged facts explaining why Abuarqob began to discover the alleged fraud in 2022, which also tend to explain why she did not make that discovery earlier. *See* ECF 59, at 4–5 ¶¶ 19–24 (alleging that Abuarqob was in and out of the United States from 2014 to 2017, and that she was

financially dependent on her husband from 2018 to 2022). This case therefore does not qualify as one of the "rare circumstances" in which a complaint warrants dismissal on a 12(b)(6) motion arguing that it is time-barred. *Goodman*, 494 F.3d at 464; *see also CSX Transp. Inc.*, 406 F. App'x at 730 (finding that dismissal based on statute of limitations was not warranted when the case required "a fact-intensive inquiry as to when [plaintiff] knew or should have known of the existence of the claimed RICO violations"). Ali is not precluded from raising this affirmative defense in his answer.

*ii. Plaintiffs Have Pled Sufficient Facts to Support The Existence of a RICO Enterprise.*

Castro and Rafat argue that Plaintiffs have not established the existence of a distinct enterprise as required by statute. ECF 63-1, at 7. Plaintiffs argue to the contrary. ECF 75, at 6. The RICO statute defines enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Since Plaintiffs concede that the "Rafat Enterprise" is "not a legal entity," arguing instead that it is "a union or group of individuals associated in fact," ECF 59, at 17 ¶ 100, the Court will limit its analysis to whether Plaintiffs have pled sufficient facts to establish the existence of an association-in-fact enterprise.

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). "An association-in-fact enterprise is not defined by a formal legal structure, but is instead characterized by the association of its members 'for a common purpose of engaging in a course of conduct.'" *Chambers v. King Buick GMC, LLC*, 43 F. Supp. 3d 575, 589 (D. Md. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). "To be organized, an association-in-fact enterprise 'need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods.'" *Id.* (quoting *Boyle*

*v. United States*, 556 U.S. 938, 948 (2009)). "Nevertheless, '[v]ague allegations of a RICO enterprise . . . lacking any distinct existence and structure' will not survive dismissal." *Yesko v. Fell*, Civ. No. ELH-13-3927, 2014 WL 4406849, at *9 (D. Md. Sep. 5, 2014) (quoting *Mitchell Tracy v. First Am. Title Ins. Co.*, 935 F. Supp. 2d 826, 843 (D. Md. 2013)).

Rafat and Castro argue that Plaintiffs failed to establish the existence of an association-in-fact enterprise because they "fail to establish that a common purpose existed between" the defendants on this count, and because they "fail[ ] to demonstrate that [defendants] acted together in an interdependent and coordinated manner." ECF 63-1, at 9–10. However, Plaintiffs pled sufficient facts to establish both of those aspects of an association-in-fact enterprise. Plaintiffs' allegations regarding the Parsonsburg Road, LLC ("Parsonsburg"), for example, demonstrate both a common purpose and coordinated action between the defendants on this count. Plaintiffs contend that Ali filed Parsonsburg's articles of incorporation, ECF 59, at 6 ¶ 28, Parsonsburg was "associated with Rafat's phone number and [a] shared address with [Castro] at 20 Rabbit Run Lane," ECF 59, at 8 ¶ 41, and that Fatin opened a Wells Fargo business account associated with Parsonsburg, *id.* Defendants' alleged actions surrounding Parsonsburg demonstrate a common purpose of defrauding their alleged victims, as well as coordinated action, as each defendant had their own role to play. Plaintiffs also allege the structure of Rafat Enterprise to comprise identity theft schemes against multiple victims, with Rafat recruiting J1 students, Rafat and Castro directing Ali to open fraudulent businesses, and directing Fatin to open fraudulent bank accounts. ECF 59, at 10 ¶¶ 51–54. Plaintiffs have therefore alleged sufficient facts to survive the motion to dismiss on this ground.[6]

---

[6] Given their factual inaccuracies, several of Castro and Rafat's arguments to the contrary appear to rely on a prior version of the complaint. For example, Castro and Rafat contend that "Plaintiff attempts, in an insufficient manner, to draw a relationship between Fatin and Ali by stating that they both live in New Jersey and that '[u]pon information and belief, Fatin and Ali are related to each other,' without specifically stating the manner in which they are related." ECF 63-1, at 9. The purported quote from the complaint does not appear in the second

*iii. Plaintiffs Have Pled Sufficient Predicate Acts to Establish a RICO Pattern.*

Pursuant to the RICO statute, to establish a "pattern of racketeering activity," plaintiffs must plead facts showing "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). Fatin and Ali argue that Count I must be dismissed because the complaint does not identify "two predicate acts by each defendant," which, in their view, is necessary to establish RICO liability. ECF 55-1, at 6; ECF 54-1, at 6. Plaintiffs argue to the contrary, contending that they need not allege that each defendant "individually commit[ted] all acts." ECF 77, at 7.

The Supreme Court has rejected Fatin and Ali's argument in the context of a criminal RICO charge under § 1962(d), the conspiracy subsection. Reasoning that "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense," the Court rejected the defendant's argument that "[t]here could be no conspiracy offense . . . unless [defendant] himself committed or agreed to commit the two predicate acts requisite for a substantive RICO offense under § 1962(c)." *Salinas v. United States*, 522 U.S. 52, 61, 63 (1997); *see also United States v. Willock*, 696 F. Supp. 2d 536, 541 n.5 (D. Md. 2010) ("The Government need not prove that each defendant committed two predicate acts; it is sufficient if two such acts were committed by any member of the conspiracy." (citing *Salinas*, 522 U.S. at 64–66)). The rule announced in *Salinas* applies with equal force in the context of a civil RICO claim. *See FX Aviation Capital LLC v. Guerrero*, Civ. No. 24-1027, 2025 WL 521303, at *10 n.7 (4th Cir. Feb. 18, 2025). This approach permits a plaintiff to "sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962" through a civil suit "for a violation of § 1962(d)." *Beck v.*

---

amended complaint, which instead alleges that "Fatin and Ali are currently married to each other." ECF 59, at 9 ¶ 47.

*Prupis*, 529 U.S. 494, 506–07 (2000). Indeed, a defendant may be liable under § 1962(d) without being a member of the RICO enterprise itself. *See Amazon.com, Inc. v. WDC Holdings LLC*, 155 F.4th 313, 326 n.5 (4th Cir. 2025) (quoting *United States v. Cornell*, 780 F.3d 616, 631 (4th Cir. 2015)); *see also Salinas*, 522 U.S. at 65 (observing that it can be "somewhat difficult to determine just where the enterprise ends and the conspiracy begins").

Therefore, each defendant need not have committed two predicate acts to be liable for RICO conspiracy under subsection (d), but if Plaintiffs failed to allege that each defendant committed two predicate acts, the substantive RICO counts under subsections (b) and (c) must be dismissed as to that defendant. *See Park v. Jack's Food Systems, Inc.*, 907 F. Supp. 914, 917 (D. Md. 1995) ("[I]t is indisputable that to maintain a section 1962(c) action, at least two predicate acts must be pleaded against each defendant."); *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 537 (S.D.N.Y. 2002) ("In order to maintain a RICO claim, a plaintiff must allege that each defendant engaged in two or more predicate acts."); *Ryan v. State*, Civ. No. No. 91 C 3725, 1999 WL 59982, at *6 (N.D. Ill. Feb. 3, 1999) ("Under § 1962(d), it does not matter which defendant committed the predicate acts . . . Liability under § 1962(c), however, requires that each defendant in a RICO scheme commit at least two predicate acts in furtherance of the scheme." (citations omitted)).

Plaintiffs pled sufficient predicate acts to sustain both conspiracy and substantive RICO claims against each defendant on this count. Plaintiffs allege that Fatin opened two fraudulent bank accounts, one in Abuarqob's name, and one in the name of her sister, Sara Abuarqob ("Sara"), who is not a party to this case. ECF 59, at 8 ¶¶ 41, 43. Fatin correctly argues that "Plaintiffs do not have standing to assert bank fraud as a predicate offense for their civil RICO claim." ECF 55-1, at 7. "The bank fraud statute prohibits the execution, or attempted execution, of 'a scheme or artifice' to (1) 'defraud a financial institution' or (2) 'obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody

or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises[.]'" *Yesko*, 2014 WL 4406849, at *10 (citing 18 U.S.C. § 1344). In *Yesko*, Judge Hollander explained that "numerous courts, including several district courts within the Fourth Circuit, have concluded that plaintiffs that are not 'a financial institution' cannot bring civil RICO claims premised on bank fraud in violation of 18 U.S.C. § 1344." *See id.* (collecting cases).

However, Fatin's argument that "none of Fatin's alleged conduct could plausibly constitute a violation of 18 U.S.C.§ 1028," relating to identification document fraud, is unavailing. ECF 55-1, at 8. That statute covers the conduct of anyone who

> knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law.

18 U.S.C. § 1028(a)(7). Plaintiffs allege that when Fatin opened the Wells Fargo account in Abuarqob's name, she had access to Abuarqob's "date of birth, social security number and Jordanian passport identification number" and she did not fulfill her obligation to verify Abuarqob's identity. ECF 59, at 8 ¶¶ 41–42. The Court draws "all reasonable inferences in favor of the plaintiff" at this stage. *Nemet Chevrolet*, 591 F.3d at 253. These allegations support the inference that Fatin knew the application to open the account used Abuarqob's identification without lawful authority, especially since it was a "walk-in application submitted in person" and Abuarqob alleges that she did not submit the application herself. ECF 59, at 8 ¶¶ 40–42. Plaintiffs possess less information regarding Fatin's alleged actions in opening the fraudulent Wells Fargo account in Sara's name, but the facts alleged similarly give rise to the inference that Fatin knew she lacked lawful authority to use Sara's identification documents to do so. *See id.* at 8–9 ¶ 43 (alleging that Fatin opened a fraudulent Wells Fargo account in Sara's name, but linked to Rafat and Castro's phone numbers). Plaintiffs have therefore pled facts sufficient to establish that Fatin personally committed two predicate acts.

As to Ali, Plaintiffs allege that he opened several fraudulent LLCs in the names of Abuarqob and Sara. ECF 59, at 6 ¶¶ 27–28, at 9–10 ¶ 49. The identification fraud statute analyzed above defines "means of identification" to include "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." 18 U.S.C. § 1028(d)(7). Plaintiffs contend that the applications for these allegedly fraudulent companies contained Abuarqob and Sara's names, and since they also allege they had no knowledge of these companies at the time of their incorporation, the complaint supports the inference that Ali knew he was using their names without lawful authority. ECF 59, at 6 ¶¶ 27–28, at 9–10 ¶ 49, at 17 ¶ 101. Plaintiffs have therefore pled sufficient facts to establish that Ali personally committed two predicate acts.

There appears to be no dispute that Plaintiffs pled facts demonstrating Rafat and Castro committed sufficient predicate acts to support a substantive RICO claim against them, since Rafat and Castro themselves explain that "Plaintiff alleges that Rafat and [Castro] committed seven predicate acts within a three-year period between 2014 and 2017." ECF 63-1, at 16; *see also* ECF 59, at 5–6 ¶¶ 26–27, at 13 ¶ 75, at 14 ¶ 85. Count I will not be dismissed for failure to plead sufficient predicate acts.

*iv. The scope of the alleged offenses is sufficiently broad to establish a RICO pattern under the* Brandenburg *factors.*

To establish a RICO violation, a plaintiff must plead the existence of at least two predicate acts of racketeering. *See* 18 U.S.C. § 1961(5); *see also supra*, at Section III.B.1.iii. However, "while two such acts are necessary to make out a RICO pattern, they may not be sufficient." *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) (citing *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). "To constitute a pattern . . . predicate acts of racketeering activity must reflect both 'continuity' and 'relationship.'" *Id.* (quoting *Sedima, SPRL*, 473 U.S. at 496 n.14). The Fourth Circuit has identified a nonexhaustive list of factors

to consider when determining the existence of a RICO pattern, which include "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, and the potential for multiple distinct injuries." *Id.* The *Brandenburg* court cautioned that no single factor "is necessarily determinative." *Id.* And where the predicate acts underlying the alleged RICO offense are mail or wire fraud, courts are "cautious" to find a RICO pattern, "because '[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice.'" *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000) (quoting *Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998)). "When courts look for a 'distinction between ordinary or garden-variety fraud claims better prosecuted under state law' and those that may give rise to a RICO claim, the key inquiry is whether there are 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" *Solange SOL v. M&T Bank*, 713 F. Supp. 3d 89, 102 (D. Md. 2024) (quoting *Al-Abood*, 217 F.3d at 238).

Ali, Rafat, and Castro argue that too few alleged victims have been harmed by the actions alleged in the complaint to constitute a RICO violation. ECF 54-1, at 5; ECF 63-1, at 16. Plaintiffs counter that they have pled sufficient facts to establish a RICO pattern under the *Brandenburg* factors, contending the complaint demonstrates that "the Rafat Enterprise identity theft scheme is not a onetime plan to establish a single goal." ECF 75, at 8. The Court agrees that Plaintiffs have pled sufficient facts to establish a RICO pattern under the *Brandenburg* factors.

Defendants allegedly engaged in predicate acts of racketeering activity spanning from 2013 to 2022. *See* ECF 59, at 10 ¶ 49(c) (identifying a fraudulent LLC allegedly opened by Ali on September 26, 2013); *see also id.* at 14–15 ¶¶ 84, 87 (stating that "[o]n or around April 2022 . . . Arqob confronted Rafat and threatened legal action," and presumably halted his mail

collection for Rafat at that time, which he had continued "under duress" since their 2020 confrontation). The alleged predicate acts include opening, by the Court's count, at least 16 fraudulent bank account and credit cards, and at minimum seven fraudulent LLCs. ECF 59, at 5–6 ¶¶ 26–27, at 8 ¶¶ 41, 43, at 9–10 ¶¶ 46, 49, at 12–13 ¶¶ 73–74, at 13 ¶ 74, at 14–15 ¶¶ 86, 89; *see also* 18 U.S.C. § 1028(a)(7). Additionally, the alleged predicate acts encompass countless acts of mail fraud. ECF 59, at 13–14 ¶¶ 81–85; *see also* 18 U.S.C. § 1341. Finally, the Rafat Enterprise allegedly targeted the three named plaintiffs, as well as at least five other victims named in the complaint. ECF 59, at 9 ¶ 46, at 15 ¶ 89. Abuarqob and Arqob allege particular harm they have suffered as a result of this alleged identity theft scheme. *Id.* at 11 ¶ 57, at 16 ¶ 92.

Plaintiffs alleged a scope of conduct that is broad enough in its timespan and impact to "reflect both continuity and relationship." *Brandenburg*, 859 F.2d at 1185 (citations omitted). "[T]his Court and the Fourth Circuit have suggested that a period of two years is insufficient" to establish a RICO violation, *Solange SOL*, 713 F. Supp. 3d at 103, while the *Brandenburg* court found that a "period of more than three years," in conjunction with other factors, was likely to support a RICO pattern, *Brandenburg*, 859 F.2d at 1186. The nine years implicated by this case far exceed the two-to-three-year range which presented those courts with a close question. Additionally, the complaint alleges that the Rafat Enterprise targeted at least eight known victims, which exceeds the limited number of victims many courts have found inadequate. *See Al-Abood*, 217 F.3d at 238–39 (noting that there "is no per se rule against a RICO claim involving only one victim" but collecting cases that have found RICO claims involving only one to two victims insufficient).

Although Rafat and Castro argue that their alleged predicate acts "constituted [ ] an alleged single scheme, that is, credit card fraud," ECF 63-1, at 15, the *Brandenburg* court cautioned that "[t]he fact that the discrete objectives of each of the predicate acts were all of

the same basic type would not, of course, prevent the predicate acts from constituting a pattern. . . . the pattern requirement cannot be avoided by 'the semantical game of generalizing th[e] illegal objective' of the related predicate acts," *Brandenburg*, 859 F.2d at 1186 n.6 (quoting *Walk v. Balt. & Ohio R.R.*, 847 F.2d 1100, 1106 (4th Cir. 1988) (internal quotations omitted)). Here, the scheme as alleged "did not involve the commission of multiple preparatory acts aimed at the infliction of a single basic injury, but the commission of a series of independent acts that were distinct criminal ends in themselves"—namely, defrauding each impacted victim. *Id.* at 1186. The Court must also consider whether the behavior as alleged poses a "special threat to social well-being." *Solange SOL*, 713 F. Supp. 3d at 102 (citations omitted). Plaintiffs allege conduct intentionally targeting immigrant students, whose youth and impermanent immigration status render them particularly vulnerable. ECF 59, at 18 ¶ 103. In fact, Arqob alleges that Rafat sought to leverage Arqob's immigration status against him when he began to question Rafat's activities. *Id.* at 14–15 ¶¶ 84, 87. The scope and nature of the wrongful acts, as alleged, is sufficient to constitute a RICO pattern and sustain Plaintiffs' RICO claim against the named defendants.

2. <u>Count II, Fraud</u>

Plaintiffs' second count brings a common law fraud claim against only Castro and Rafat. ECF 59, at 19. Castro and Rafat do not advance substantive arguments in support of this claim's dismissal, arguing instead that "if this Court dismisses the RICO claims asserted against Rafat Abuarqob and Erika Castro, Plaintiff's state level and common law claim[] of fraud . . . against Rafat and [Castro] should likewise be dismissed because, with the RICO claims extinguished, the Court loses its subject matter jurisdiction over all remaining state level and common law claims." ECF 63-1, at 6. They do not advance an argument in the alternative should the Court decline to dismiss the RICO claim, appearing, rather, to concede that the allegations against them constitute a "'garden variety' fraud case." ECF 63-1, at 18. Since the

Court declined to dismiss the RICO claim, *see supra*, at Section III.B.1., the fraud claim against Rafat and Castro also survives.

3. Count III, Civil Conspiracy

In their third count, Plaintiffs assert a common law civil conspiracy claim against defendants Castro, Rafat, Ali, and "Fatin and/or in the alternative Wells Fargo." ECF 59, at 20. Ali, Fatin, and Wells Fargo contend that Plaintiffs have failed to state a claim on this count. *See* ECF 54-1, at 6; ECF 55-1, at 10; ECF 56-1, at 8. Castro and Rafat argue for this count's dismissal on the same basis that they argued for the negligence claim's dismissal—that the Court will lose subject matter jurisdiction over this claim should it dismiss the RICO claim. ECF 63-1, at 6. For the reasons below, this count will be dismissed.

"A federal district court considering state common law claims applies the substantive law of the forum state." *Menk v. MITRE Corporation*, 713 F. Supp. 3d 113, 183 (D. Md. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). To state a claim for civil conspiracy under Maryland law, a plaintiff must allege facts showing "1) [a] confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) [a]ctual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (quoting *Van Royen v. Lacey*, 277 A.2d 13, 14–15 (Md. 1971) (internal quotations omitted)). Maryland law does not provide a "separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established." *Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020). "It is 'improper' to plead civil conspiracy in a separate count of a complaint as if it were a 'cause[ ] of action independent of an underlying tort.'" *Id.* at 648 (quoting *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n.6 (Md. 2000)).

Fatin and Wells Fargo argue that this count cannot survive because in their view "[i]t is well-settled that a crime cannot be the predicate tortious conduct for a civil conspiracy claim because a crime is not a tort." ECF 55-1, at 11; ECF 56-1, at 9. The complaint alleges that the defendants on this count "together conspired to commit mail fraud, bank fraud and identity theft." ECF 59, at 21 ¶ 121. Fatin and Wells Fargo contend that these acts cannot be the basis of Plaintiffs' civil conspiracy claim because "they are crimes and no private cause of action is found in these criminal statutes." ECF 56-1, at 10; ECF 55-1, at 11–12. Plaintiffs do not appear to dispute that the statutes prohibiting mail fraud, bank fraud, and identity theft lack a private cause of action, but argue instead that "[t]he underlying tortious conduct in this case is the RICO violation because through the violation of the underlying statutes (i.e. mail fraud, bank fraud, identity theft) it provides a private right of action." ECF 78, at 6.

However, Plaintiffs do not identify any cases in which any court—in Maryland or elsewhere—considered a RICO violation to be a tort. Indeed, "[e]very violation of a statute is not a tort." *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1579 (Fed. Cir. 1996) (Nies, J., concurring) (citing *Wood v. United States*, 961 F.2d 195, 198–99 (Fed. Cir. 1992) for the proposition that "a violation of federal laws gives rise to a tort claim only if state law provides basis for liability"). Because federal courts presiding over state common law claims are "bound to apply the applicable state law as it exists and cannot create or expand the common law," the Court here declines to extend the scope of Maryland civil conspiracy liability to a proposed tort apparently not recognized in Maryland law. *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 688 n.3 (M.D.N.C. 1999); *see also Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994) ("Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law. . . . Our role is to apply the current law of the jurisdiction, and leave it undisturbed." (quoting *City*

*of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir.1993) (internal quotations omitted)). Count III is therefore dismissed.

4. Count IV, Unjust Enrichment

Plaintiffs' fourth count asserts a common law unjust enrichment claim against Rafat, Castro, Fatin, and Ali. ECF 59, at 21. Fatin and Ali argue for this count's dismissal on the basis that Plaintiffs failed to state a claim, ECF 54-1, at 6; ECF 55-1, at 12, and Rafat and Castro again rest their argument for dismissal on the Court's potential loss of subject matter jurisdiction in the event it dismisses Count I, ECF 63-1, at 17. Plaintiffs have adequately stated a claim for unjust enrichment.

The Court must apply the law of the forum state to this state common law claim. *Menk*, 713 F. Supp. 3d at 183 (citing *Erie*, 304 U.S. at 78). "In Maryland, to sustain an unjust enrichment claim, a plaintiff must establish (1) that he or she conferred a benefit upon the defendant, (2) that the defendant appreciated or had knowledge of the benefit, and (3) that the defendant accepted or retained the benefit under 'such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.'" *The Fischer Org., Inc. v. Landry's Seafood Rests., Inc.*, 792 A.2d 349, 356 (Md. App. 2002) (quoting *Kline, Inc. v. Signet Bank/Maryland*, 651 A.2d 442, 444 (Md. App. 1995)). "The benefit need not be conferred affirmatively, but may be conferred 'by reason of an infringement of another person's interest or of loss suffered by the other.'" *Chassels v. Krepps*, 174 A.3d 896, 905 (Md. App. 2017) (quoting *Berry & Gould P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). Additionally, "[i]t is not required that a 'benefit conferred in an unjust enrichment action come necessarily and directly to the defendant from the plaintiff[']s own resources.'" *Wallace v. Hawk*, 348 A.3d 627, 674 (Md. App. 2025) (quoting *Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 353 (Md. 2007)).

Plaintiffs contend that they conferred a benefit on the defendants on this count when the defendants used their identities to open bank accounts, credit cards, and businesses, and that the defendants "had an appreciation or knowledge of the benefit because they obtained a financial benefit by withdrawing thousands of dollars" in Plaintiffs' names. ECF 59, at 21 ¶¶ 126–27. Fatin argues that Plaintiffs cannot sustain this claim because, in her view, they do not allege that they conferred a benefit directly on Fatin, nor do they allege that they paid the balances on the fraudulent accounts themselves. ECF 55-1, at 13.

As an initial matter, Plaintiffs are not required to have paid the balances "from [their] own resources" to sustain this action. *Wallace*, 348 A.3d at 674 (citations omitted). Moreover, as analyzed *supra*, at Section III.B.1., Plaintiffs stated a claim for a RICO violation against all four defendants named in this count. The RICO claim was premised on the existence of an enterprise between these four defendants, each of whom allegedly participated in a far-reaching scheme of identity theft which allowed them to "draw funds from [the alleged fraudulent accounts] for the financial gain of the Rafat Enterprise to the detriment of Plaintiffs." ECF 59, at 19 ¶ 107. Under the theory of their RICO claim, Plaintiffs stated facts sufficient to infer that when they shared their identity documents with these defendants, they were in fact conferring a benefit which these defendants appreciated and kept under inequitable circumstances. *See Consumer Protection Div. v. Morgan*, 874 A.2d 919, 945 (Md. 2005) ("In this case, the unjust enrichment is [defendant's] additional profit from his deception."). Additionally, the Maryland Supreme Court has noted that "[t]he concept of unjust enrichment is notoriously difficult to define." *Berry & Gould, P.A.*, 757 A.2d at 113 (quoting D. Friedmann, *Restitution of Benefits Obtained Through the Appropriation of Property or the Commission of a Wrong*, 80 Colum. L. Rev. 504, 504–05 (1980) (internal quotations omitted)). For those reasons, the Court

concludes that Plaintiffs' claim for this "indefinite and vague" tort, *id.*, has at least "facial plausibility," *Iqbal*, 556 U.S. at 678. Count IV will not be dismissed.[7]

5. Count V, Negligence

Count V asserts a common law negligence claim against BANA and Wells Fargo. ECF 59, at 22. BANA has not moved to dismiss this claim, but Wells Fargo has, arguing that Plaintiffs failed to state a claim upon which relief can be granted. *See* ECF 61 (BANA's answer to the complaint); ECF 56-1, at 5. In Plaintiffs' response to Wells Fargo's motion to dismiss, they state that "[a]t this juncture, Plaintiffs only intend to pursue [Abuarqob]'s civil conspiracy claim against [Wells Fargo]." ECF 78, at 5. Wells Fargo contends that this statement amounts to a withdrawal of Plaintiffs' negligence claim against it. ECF 81, at 3. The Court agrees. Since Plaintiffs appear to voluntarily abandon their negligence claim against Wells Fargo, Count V shall be dismissed as to Wells Fargo.

"If not express, abandonment must be clear and unambiguous." *AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 91 (4th Cir. 2018). Courts weigh "several commonsense factors" when determining whether a party's acts "constitute clear and unambiguous abandonment," which include, in relevant part, whether they "represented that [they] did not intend to pursue the claim." *Id.* at 92. Plaintiffs' statement that they "only intend to pursue" the civil conspiracy claim against Wells Fargo, in the context of their response to Wells Fargo's arguments to dismiss both the negligence and civil conspiracy claim, ECF 78, at 5, constitutes a

[7] Ali and Fatin each advance arguments that this claim should be dismissed as untimely. ECF 54-1, at 9; ECF 55-1, at 13 n.2. Ali's argument on this point cannot prevail at this stage for the same reasons noted *supra*, at Section III.A. Fatin's argument focuses on Arqob's unjust enrichment claim in particular, contending that since he has alleged that he learned of the fraudulent activity in March 2022, but did not seek to join this case until June 2025, his claim is barred by the applicable three-year statute of limitations. ECF 55-1, at 13 n.2; ECF 59, at 14–15 ¶ 86. However, since the face of the complaint includes facts which could plausibly support a tolling argument, and because this situation implicates questions of the relation-back doctrine which neither party has briefed, the Court will not take the "rare" step of dismissing this count based on an affirmative defense at the motion to dismiss stage. *Goodman*, 494 F.3d at 464 (citations omitted).

representation that they "did not intend to pursue" the negligence claim, *AirFacts, Inc.*, 909 F.3d at 92. *See also Green v. iMentor, Inc.*, Civ. No. RDB-24-2567, 2025 WL 3077594, at *4 (D. Md. Nov. 4, 2025) ("A plaintiff may abandon her claim by . . . affirmatively communicating to the court an intent not to oppose defendants['] Motion.").

## IV. CONCLUSION

For the foregoing reasons, Ali's motion to strike is **GRANTED**, Wells Fargo's motion to dismiss is **GRANTED,** and Ali, Fatin, and Rafat and Castro's motions to dismiss are **GRANTED** in part and **DENIED** in part.

A separate implementing Order will issue.

Dated: September 4, 2026

/s/
Brendan A. Hurson
United States District Judge